IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHELLY GROSS, | |
| *Plaintiff*, | |
| v. | Civil No.: 1:25-cv-00042-JRR |
| HALVIK CORP., | |
| *Defendant*. | |

## MEMORANDUM OPINION

Pending before the court is Defendant Halvik Corp.'s Motion to Dismiss (ECF No. 8, the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted.

**I.   BACKGROUND[1]**

Plaintiff alleges she was wrongfully terminated by her former employer, Halvik Corp. Beginning June 27, 2017, Plaintiff was contracted through Business Integra to work at National Air and Space Aeronautics Solutions for Enterprise-Wide Procurement ("NASA SEWP"). (ECF No. 5 ¶ 4.) Her employment for Defendant began when Defendant assumed her contract from Business Integra in January 2022. *Id*. Because her work for NASA SEWP involved federal contracts, Plaintiff received training on Section 508 of the Rehabilitation Act of 1973 ("Section 508"), codified at 29 U.S.C. 794d. *Id*. ¶ 6.

Relevant here, Section 508 provides that Federal departments and agencies shall ensure, unless it would impose an undue burden to the department or agency, that

---

[1] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 5.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

> individuals with disabilities who are members of the public seeking information or services from a Federal department or agency to have access to and use of information and data that is comparable to the access to and use of the information and data by such members of the public who are not individuals with disabilities.

29 U.S.C. 794d(a)(1)(A)(ii). Defendant maintained internal policies for compliance with Section 508, including requiring that all video projects contain closed captioning. (ECF No. 5 ¶ 7.)

On October 24, 2023, Courtney Andrews, the Communications Manager, assigned Plaintiff a new project (the "Industry Day Project"). *Id.* ¶ 8. Plaintiff was already working on another assignment as a Content Video Editor, so she did not start the Industry Day Project until the following day, October 25. *Id.* On October 26, Mr. Andrews asked Plaintiff if the Industry Day Project would be completed by the weekend. *Id.* ¶ 9. Plaintiff informed Mr. Andrews that she was nearly finished with the Industry Day Project but still needed to add closed captioning to comply with Section 508. *Id.* Mr. Andrews instructed Plaintiff to release the first part of the Industry Day Project without closed captioning by October 27 (a Friday). *Id.* Plaintiff complied and submitted the project "ahead of schedule on Thursday, October 26, 2023." (ECF No. 5 ¶ 10.)

Later in the day on October 26, Mr. Andrews emailed Plaintiff stating that she had been insubordinate including "threatening or refusing to complete tasks as assigned; not following the chain of command; challenging [his] authority; speaking in a[n] unprofessional and disrespectful tone; and general insubordination." *Id.* ¶ 11. Plaintiff forwarded this email to Mr. Michael Boland, the SEWP Department Manager and Mr. Andrews's supervisor, and Ms. Terita Wilson, the SEWP Program Manager. *Id.* ¶ 12. Neither responded to Plaintiff. *Id.*

On October 31, Mr. Boland asked Plaintiff if she was available to speak with him that day. *Id.* ¶ 13. Plaintiff had a prior commitment and scheduled a meeting with Mr. Boland for the following morning instead. *Id.* Mr. Boland informed Plaintiff that Mr. Andrews would be present

2

for their meeting. *Id.* ¶ 14. Plaintiff expressed her uneasiness with his presence and requested that Mrs. Wilson be present as well; however, the meeting proceeded with just Mr. Andrews, Mr. Boland, and Plaintiff. (ECF No. 5 ¶ 14.)

During the meeting, Plaintiff requested specific examples of her alleged insubordination and told Mr. Boland that Mr. Andrews instructed her to upload the Industry Day Project without closed captioning. *Id.* ¶¶ 15, 16. Mr. Boland and Mr. Andrews did not provide specific examples of insubordination and Mr. Boland informed Plaintiff that lack of compliance with Section 508 was "the client's problem and not ours." *Id.* ¶ 16. At the conclusion of the meeting, Mr. Boland informed Plaintiff that she was a valued employee and that the Human Resources Department would contact her shortly. *Id.* Two hours after the meeting, Plaintiff received a letter from Human Resources terminating her employment for insubordination. *Id.* ¶ 17.

Plaintiff initiated this action on November 22, 2024, in the Circuit Court for Howard County, Maryland (Case No. C-13-CV-24-000992). *Id.* Defendant removed the action to this court on January 6, 2025 (ECF No. 1), and thereafter filed the instant Motion (ECF No. 8).

## II.   **LEGAL STANDARD**

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

Plaintiff's Complaint contains a single cause of action: wrongful discharge. Under Maryland common law, "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 450 (2017). There exists, however, "a narrow cause of action for wrongful discharge of an otherwise at-will employee." *Rollins v. Rollins Trucking, LLC*, Case No. JKB-15-cv-3312, 2016 WL 81510, at *4 (D. Md. Jan. 7, 2016). To state a claim for wrongful discharge under this exception, a plaintiff must allege (1) she was discharged from employment, (2) the discharge violated a clear mandate of public policy, (3) a nexus between the plaintiff employee's conduct

and the employer's decision to fire her. *Elliott v. Maryland Corr. Training Ctr.*, No. CV CCB-20-2963, 2021 WL 2155035, at *3 (D. Md. May 27, 2021).

"Maryland courts have been hesitant to expand the [wrongful discharge] cause of action, and [are] strict in enforcing its limitations. One such limitation is the requirement that the employee's discharge have violated a 'clear mandate of public policy.'" *Wilkins v. Swinton Home Care, LLC*, Civil Case No. 24-CV-2601-ABA, 2025 WL 2578101, at *3 (D. Md. Sept. 5, 2025) (quoting *Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981)). Indeed, much of the case law regarding the tort of wrongful termination concerns what constitutes a clear mandate of public policy. *See Miller-Phoenix v. Balt. City Bd. of Sch. Comm'rs*, 246 Md. App. 286, 296 (2020) (collecting cases). "A public policy is a principle of law 'which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good.'" *Elliott*, 2021 WL 2155035, at *4 (quoting *King v. Marriott Int'l. Inc.*, 160 Md. App. 689, 700 (2025)). The "declaration of public policy is normally the function of the legislative branch." Courts, therefore, turn to "'prior judicial opinions, legislative enactments, or administrative regulations' as the chief source of public policy." *Yuan*, 452 Md. at 451.

A court's power to announce a new public policy is subject to two limiting factors.

> The first limiting factor with respect to adopting a "new" public policy mandate for a wrongful discharge claim is derived from the generally accepted *purpose* behind recognizing the tort in the first place: to provide a remedy for an otherwise unremedied violation of policy . . . . A second limiting factor in defining a public policy mandate as a cause of action in tort is the notion that the policies should be reasonably discernible from prescribed constitutional or statutory mandates.

*Wholey v. Sears Roebuck*, 370 Md. 38, 52–53 (2002).

Defendant spends much of its Motion asserting that the Complaint should be dismissed as Section 508 is an inadequate basis for a new public policy. (ECF No. 8-1 at pp. 5–9.) Plaintiff,

5

however, does not allege in the Complaint that her termination violates a clear public policy contained in Section 508.[2]  Plaintiff, instead, alleges that the public policy violated by her termination "prohibits an employer from terminating an employee where an employee exercised a specific legal right, or where an employee fulfilled a statutory duty." (ECF No. 5 ¶ 21.)  Plaintiff proceeds to allege the following:

> 22. Ms. Gross was terminated because she sought to comply with the applicable law designed to protect the rights of disabled citizens by informing her supervisor about the violation of the law, advocating for the legal rights of others and promoting both public and company policy.
>
> 23. On November 1, 2023, as a result of her seeking to comply with the law that protects the public, Halvik terminated Ms. Gross because she exercised these aforementioned rights.
>
> 24. It was against public policy to violate Rule 508 and for Havlik to wrongfully terminated Ms. Gross for reporting the violation of the Rehabilitation Act of 1973.

*Id*. ¶¶ 22–24.

To "tie[] abusive discharge claims down to a manageable and clear standard," the Fourth Circuit limits wrongful discharge in violation of public policy claims to "situations involving the actual refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty." *Adler v. Am. Standard Corp.,* 830 F.2d 1303, 1307 (4th Cir. 1987); *see also Elliott*, 2021 WL 2155035, at *4 (explaining "Maryland courts have found a violation of a clear public policy only in two general situations: (1) where an employee was fired for refusing to violate the law or the legal rights of a third party and (2) where an employee has been terminated for exercising a specific

---

[2] And if she did make such an argument, it would be unavailing.  "Maryland courts have been clear that 'there must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation." *Elliot*, 2021 WL 2155035, at *4 (quoting *King*, 160 Md. at 702).  Plaintiff cites no clause in Section 508 that prohibits her termination under the circumstances alleged in the Complaint.

legal right or duty"). Plaintiff alleges that her termination was in violation of these two public policies. (ECF No. 5 ¶ 21.)

Plaintiff argues that her termination was wrongful because she was fired for refusing to violate Section 508, seeking to comply with Section 508, and reporting Defendant's violation of Section 508. *Id*. ¶¶ 22–24. Defendant, however, insists that the Complaint should be dismissed because Section 508 does not apply to Plaintiff and, thus, her termination does not violate the public policies Plaintiff relies upon. Additionally, Defendant avers Plaintiff does not allege that she refused to engage in unlawful conduct. (ECF No. 8-1 at p. 13.)

### A. *Termination for Exercising a Specific Legal Right or Duty*

Defendant argues that Section 508 does not apply to Plaintiff and, accordingly, Plaintiff cannot plausibly allege that she was terminated for exercising a specific legal right or duty. In other words, to state a claim for wrongful discharge under this theory, Plaintiff must plausibly allege that she was terminated for exercising her duty under Section 508. Because, Defendant asserts, Plaintiff has no duty under Section 508, her claim for wrongful discharge must be dismissed.

Defendant cites two cases – *Thompson v. Memorial Hospital at Easton, Maryland, Inc.*, 925 F. Supp. 400 (D. Md. 1996), and *Milton v. IIT Research Institute*, 138 F.3d 519 (4th Cir. 1998) – to support its argument that where a plaintiff has no specific legal right or duty under a statute, she cannot state a claim for wrongful discharge stemming from same. In *Thompson* and *Milton*, unlike here, the plaintiffs did not allege they were fired because they refused to break the law. 925 F. Supp. at 407; 138 F.3d at 522. In *Thompson*, the plaintiff alleged he was fired in violation of public policy contained in Maryland administrative regulations and Maryland statutes. 925 F. Supp. at 407. Nonetheless, the court determined that the regulatory language made clear that the

legal duty belonged to the plaintiff's employer and not the plaintiff. Thus, the court explained, "plaintiff was under no legal duty to act as he did, and therefore any public policy embodied in [the regulation] does not protect plaintiff from discharge." *Id*. at 408.

In *Milton*, the Fourth Circuit explained that while Maryland law "does provide a wrongful termination cause of action for employees who are terminated because they perform their 'statutorily prescribed duty,'" this exception is "construed narrowly by the Maryland courts." 138 F. Supp. at 523 (quoting *Adler*, 830 F.2d at 1307). To state a claim under this exception, there must be a "'clear mandate' or duty which the plaintiff himself 'actually could be held responsible for breaching.'" *Id*. In other words, the plaintiff must be terminated for performing a duty she is "explicitly required to do by Maryland law." *Id*. (citing *Bleich v. Florence Crittenton Servs.*, 98 Md. App. 123, 469–70 (1993)). In *Milton*, the court affirmed the district court's dismissal of the wrongful discharge claim because it was insufficient that someone at the plaintiff's employer was responsible for "correcting its tax filings or that the corporation may have been liable for tax fraud. This responsibility was never [the plaintiff's], nor did he face any potential liability for failing to discharge it, so his claim fails." *Id*.

Here, Section 508 set forth duties of "each Federal department or agency . . . ." 29 U.S.C. § 794d. Defendant insists that because the statute does not apply to private employers like Defendant or to individual contractors, Plaintiff has no legal duty under the Section. Plaintiff counters that she was mandated to comply with Section 508 by Defendant's internal policies. (ECF No. 10 at p. 7.) The internal policies of Defendant, a private employer, however, do not create or impose a separate, specific legal right or duty for or on Plaintiff.[3] Here, as in *Milton*, Plaintiff does

---

[3] In support of Plaintiff's argument that Section 508 creates specific duties for her, Plaintiff references "a detailed 39-slide PowerPoint provided to [NASA SEWP's] employees" (ECF No. 10 at p. 5) and a Department of Labor Acquisition Regulation ("DOLAR") requiring DOL contracts to include a clause that states that Section 508 applies to "federal departments, such as DOL, and the contractors providing support on behalf of such federal departments."

not bear the responsibility to ensure that individuals with disabilities have equal access to information technology as those without disabilities; even Defendant does not bear this burden. Section 508 creates a legal duty for NASA SEWP as a federal department or agency. 29 U.S.C. § 794d. As in *Milton*, Plaintiff does not face any potential liability for failing to comply with Section 508. Thus, Plaintiff fails to state a claim for wrongful discharge due to exercising a specific legal duty.

Defendant also argues that even if Section 508 does create a specific legal right or duty for Plaintiff, Plaintiff allows that she did not exercise this right or duty. (ECF No. 8-1 at p. 12.) Plaintiff alleges that to comply with Section 508, she was required to provide closed captioning on all videos. (ECF No. 5 ¶ 7.) Plaintiff also alleges that she submitted the Industry Day Project without applying closed captioning. *Id*. ¶ 10. Thus, the factual allegations in the Complaint, taken as true, do not support Plaintiff's argument that she was fired for exercising a specific duty. Even if Plaintiff could state a claim for wrongful discharge due to exercising a specific legal duty, she has not done so here.

### B. Termination for Refusing to Violate the Law

As relayed above, Plaintiff fails to state a claim for wrongful discharge based on the exercise of a specific legal right or duty. Her other available path to state a wrongful discharge claim is to allege that she was fired for refusing to violate the law. *See Elliott*, 2021 WL 2155035, at *4, *supra*. Defendant argues that Plaintiff fails to state a claim in this way for two reasons: first, as Section 508 does not apply to her, she would not be violating the law by failing to comply with

---

DOLAR 2952.239-70 (*Id*. at p. 5). Neither of these sources demonstrates that Section 508 creates a legal duty or obligation for Plaintiff. Further, the PowerPoint slides are not referenced in the Complaint, and do not amend or alter the plain language of Section 508 to impose a duty on Plaintiff or create consequences for Plaintiff's abdication of any purported responsibility. As for the DOLAR requirement, a regulation requiring DOL to include a clause regarding compliance with Section 508 in its contracts is immaterial to the question of whether Section 508 applies to Plaintiff based on Plaintiff's allegations in the Complaint. Plaintiff does not allege that the language of the DOLAR on which she relies was incorporated into her contract to work at NASA SEWP.

same; second, she admits that she complied with the very same instructions she alleges violated Section 508.  (ECF No. 8-1 at p. 13.)

For the reasons described above, Section 508 does not compel any conduct by Plaintiff nor impose any penalty for failure to take certain action.  Thus, crediting Plaintiff's allegations that she protested releasing the Industry Day Project without closed captioning, her release of same would not amount to a violation of Section 508.  (ECF No. 5 ¶¶ 9, 10.)  The requirement of closed captioning is not set forth in Section 508; rather it is Defendant's internal policy.  *Id*. ¶ 7.  Accordingly, Plaintiff's allegations do not plausibly show that she refused to violate the law and her claim that she was wrongfully terminated for said refusal will be dismissed.

Further, even if Plaintiff's release of the Industry Day Project without closed captioning amounted to a violation of Section 508, Plaintiff admits that she complied with instructions to carry out this violation.  *Id*. ¶ 10.  In her response to the Motion, Plaintiff avers that her momentary refusal is sufficient to support a claim for refusing to violate the law.  (ECF No. 10 at p. 10.)  Plaintiff, however, cites no authority for this assertion.  *Id*.  To the contrary, the limitation on wrongful discharge claims imposed by the Fourth Circuit specifies "situations involving the actual refusal to engage in illegal activity. . ." *Adler*, 830 F.2d at 1307.  Plaintiff fails to persuade this court that a "brief" refusal followed by acquiescence is sufficient to state a claim for wrongful termination for refusing to violate the law.  Plaintiff's claim for wrongful discharge based on refusal to violate the law will thus also be dismissed.

C. *Termination for Reporting Violation of Section 508*

In her response to the Motion, Plaintiff argues that she exercised a legal right by reporting the Section 508 violation and her alleged termination for this reporting constitutes wrongful termination in violation of public policy.  (ECF No. 10 at pp. 7–8.)  Plaintiff alleges she reported

the "legal issues regarding Mr. Andrews' instructions to post the video without close[d] captioning in violation of Rule 508" during her meeting with Mr. Boland and Mr. Andrews.  (ECF No. 5 ¶ 16.)

To support her argument, Plaintiff relies on *Wholey v. Sears Roebuck,* 370 Md. 38 (2002), and *Parada v. City of Colton*, 24 Cal. App. 4th 356 (Cal. Ct. App. 1994).  (ECF No. 10 at pp. 7–8.)  But the court in *Wholey* was clear: "To qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial officer, not merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors."  370 Md. at 62.  Additionally, Maryland courts have frequently reiterated that "internal reporting of suspected unlawful conduct is not a public policy that has been recognized in Maryland as a basis for a wrongful discharge."  *Terry v. Legato Sys.*, 241 F. Supp. 2d 566, 570 (D. Md. 2003); *see also United States ex rel. Potter v. CASA de Maryland*, No. CV PX-16-0475, 2018 WL 1183659, at *10 (D. Md. Mar. 6, 2018) (explaining "wrongful discharge does not extend to reports of illegal activity made only to supervisors within an organization" and collecting cases).  *Parada* is not controlling authority; it analyzes California law based on facts distinct from those at issue here.  Accordingly, *Parada* is unavailing in persuading the court that Plaintiff sufficiently alleges a claim of wrongful termination under Maryland law.

### D. Nexus Between Plaintiff's Conduct and Defendant's Decision to Terminate Her

The court will not address the final element of a wrongful discharge claim – namely, whether there exists "a nexus between the employee's conduct and the employer's decision to fire the employee."  *Elliott*, 2021 WL 2155035, at *3.  For the reasons set forth above, Plaintiff fails to plausibly allege that her conduct amounted to refusing to violate the law or intending to carry

out a specific legal duty or right. Thus, Defendant's decision to terminate her – even if a nexus existed between Plaintiff's conduct and Defendant's termination decision – was not wrongful. *See Lee v. Denro,* 91 Md. App. 822, 836 (1992) (noting "the fact that the employer does not have a good reason for the employee's discharge does not, in the absence of a clear violation of public policy, render the discharge 'abusive' or 'wrongful.'"). Plaintiff's claim of wrongful termination will be dismissed.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 8) shall be granted.

September 16, 2025

/S/
_____
Julie R. Rubin
United States District Judge